1    RANDALL R. LEE (152672)
     COOLEY LLP
2    1333 2nd Street
     Suite 400
3    Santa Monica, CA  90401
     Telephone: (310) 883-6400
4    Facsimile:  (310) 883-6500
     randall.lee@cooley.com
5
     Attorney for Respondent
6    Retrophin, Inc.

7

8                       UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10

11

12   LESLEY ZHU,                          Case No.  2:19-mc-00137-JAK
                                           (AGR)
            Movant,
13                                         **RESPONDENT RETROPHIN, INC.'S
     v.                                    OPPOSITION TO LESLEY ZHU'S
14                                         UNTIMELY MOTION TO QUASH AND
     RETROPHIN, INC.,                      CROSS-MOTION FOR AN ORDER TO
15                                         SHOW CAUSE WHY SHE SHOULD
            Respondent,                    NOT BE HELD IN CONTEMPT;
16                                         MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT**
17
                                           DATE: AUG. 5, 2019 (RETROPHIN
18                                         CROSS-MOTION RE CONTEMPT);
                                           NOV. 18, 2019 (ZHU MOTION TO
19                                         QUASH)
                                           TIME: 8:30 AM
20                                         COURTROOM: 10B
                                           JUDGE: HON. JOHN A. KRONSTADT
21

22

23

24

25            **REDACTED VERSION OF DOCUMENT
26            PROPOSED TO BE FILED UNDER SEAL**

27

28

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 2

RELEVANT FACTUAL BACKGROUND ............................................................. 3

ARGUMENT ............................................................................................................. 8

I.     ZHU'S UNTIMELY MOTION TO QUASH SHOULD BE DENIED. ............. 8

     A.     Zhu's Motion To Quash Should Be Denied Because It Is Untimely. ...... 8

     B.     Zhu's Motion To Quash Should Be Denied Because She Fails to Establish Undue Burden or Any Other Basis to Quash. ........................ 11

II.    ZHU SHOULD BE ORDERED TO SHOW CAUSE WHY SHE SHOULD NOT BE HELD IN CONTEMPT. .................................................. 14

CONCLUSION ....................................................................................................... 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Nassiri*,
  2011 WL 4905639 (D. Nev. 2011)..........................................................................8

*Anderson v. Abercrombie & Fitch Stores, Inc.*,
  2007 WL 1994059 (S.D. Cal. 2007)......................................................................15

*Avila v. Cate*,
  2014 WL 508551 (E.D. Cal. 2014) .........................................................................9

*Bademyan v. Receivable Mgmt. Servs. Corp.*,
  2009 WL 605789 (C.D. Cal. 2009) ................................................................14, 16

*Barnes v. Madison*,
  79 F. App'x 691 (5th Cir. 2003).........................................................................9, 16

*Caraway v. Chesapeake Exploration LLC*,
  269 F.R.D. 627 (E.D. Tex. 2010) ....................................................................8, 9, 10

*Cardoza v. Bloomin' Brands, Inc.*,
  141 F. Supp. 3d 1137 (D. Nev. 2015) ...................................................................10

*Ceremello v. City of Dixon*,
  2006 WL 2989002 (E.D. Cal. 2006) ....................................................................16

*Donovan v. Mazzola*,
  716 F.2d 1226 (9th Cir. 1983) .............................................................................16

*Ellison v. Ford Motor Co.*,
  2009 WL 10665410 (N.D. Ga. 2009).....................................................................8

*Free Stream Media Corp. v. Alphonso Inc.*,
  No. 17-cv-02107, 2017 U.S. Dist. LEXIS 202594 (N.D. Cal. Dec. 8,
  2017) .....................................................................................................................11

*Hickman v. Taylor*,
  329 U.S. 495 (1947)...............................................................................................13

*L.A. Idol Fashion, Inc. v. G&S Collection*,
  2011 WL 13217298 (C.D. Cal. 2011) ...................................................................12

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005) ................................................................................. 13

*Nationstar Mortg. LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*
316 F.R.D. 327 (E.D. Tex. 2010) ................................................................................... 9

*Perfect 10, Inc. v. Google Inc.*,
2010 WL 11523912 (C.D. Cal. 2010) ......................................................................... 13

*Pioche Mines Consol., Inc. v. Dolman*,
333 F.2d 257 (9th Cir. 1964) ............................................................................... 10, 15

*Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of N.Y. Mellon*,
2013 WL 12139833 (C.D. Cal. 2013) ......................................................................... 12

*S.E.C. v. Fuhlendorf*,
2010 WL 3547951 (D. Colo. 2010) ............................................................................. 12

*Salter v. Upjohn Co.*,
593 F.2d 649 (5th Cir. 1979) ....................................................................................... 13

*Soto v. Castlerock Farming & Transp., Inc.*,
282 F.R.D. 492 (E.D. Cal. 2012) ............................................................................... 11

*Stone v. City & Cty. of San Francisco*,
968 F.2d 850 (9th Cir. 1992) ....................................................................................... 16

*In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
2010 WL 4942645 (C.D. Cal. 2010) ........................................................................... 15

*U.S. v. Johnson Controls, Inc.*,
2008 WL 4601430 (C.D. Cal. 2008) ..................................................................... 11, 13

*In re Yassai*,
225 B.R. 478 (Bankr. C.D. Cal. 1998) ....................................................................... 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Other Authorities**

Federal Rule of Civil Procedure

12(b)(1) ...................................................................................................................4, 12

26 ....................................................................................................................................12

30(b) .........................................................................................................................10, 15

45 .............................................................................................................................*passim*

1    Pursuant to Rules 45 (f) and (g) of the Federal Rules of Civil Procedure and
2    Rule 45 of the Local Rules of this Court, Respondent Retrophin, Inc. ("Retrophin")
3    respectfully submits this Memorandum of Points and Authorities in support of its
4    Opposition to Lesley Zhu's Untimely Motion to Quash the Subpoena Ad
5    Testificandum and in support of its Cross-Motion For an Order to Show Cause Why
6    She Should Not Be Held in Contempt of Court for failure to attend a deposition
7    properly noticed by a Subpoena to Testify at a Deposition in a Civil Action, served on
8    June 17, 2019.

9    For the reasons set forth below, the Court should deny Zhu's motion to quash
10   and order Zhu to appear and testify at a deposition at Cooley LLP, 1333 2nd St, Suite
11   400, Santa Monica, CA 90401, at a date ordered by the Court, or at such time and
12   place as may be agreed by the parties, and to show cause, as promptly as the Court's
13   schedule allows, as to why the Court should not hold her in contempt.

14   This opposition and cross-motion is made following the conference of counsel
15   pursuant to L.R. 7-3, which first began on June 19, 2019.

16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW

1.

1                      ## MEMORANDUM OF POINTS AND AUTHORITIES

2        Retrophin respectfully opposes Zhu's Motion to Quash[1] and requests that this

3 Court order her to comply with a Subpoena issued in connection with *Spring*

4 *Pharmaceuticals, Inc. v. Retrophin, Inc. et al*, 2:18-cv-04553-JCJ (E.D. Pa.), and to

5 hold her in contempt and issue sanctions as the Court finds just and reasonable.

6                         ## PRELIMINARY STATEMENT

7        Respondent Retrophin served Petitioner Lesley Zhu ("Zhu") personally with a

8 subpoena that properly commanded her to appear for a deposition on June 28, 2019.

9 At one minute before 5:00 pm Pacific Time on the evening of June 27, when she was

10 sure the Court would not have time to reject her motion before the deposition, and

11 after counsel for Retrophin had already traveled from New York to Los Angeles to

12 take the deposition, she filed a motion to quash. As set forth in detail below, the

13 motion does not articulate any valid basis to quash the subpoena. She then failed to

14 appear at the deposition, thus flagrantly disobeying a validly issued subpoena. By

15 deliberately waiting until the close of business the night before the scheduled

16 deposition to move to quash, Zhu sought to grant herself the relief she seeks from the

17 Court by *fait accompli*, and to ensure that her deposition would never be taken,

18 knowing that the jurisdictional discovery phase for which her deposition is sought is

19 set to close in one week. This court should not tolerate this "Rambo" litigation tactic.

20 Zhu's untimely and meritless motion to quash should be denied and she should be

21 ordered to appear for a deposition and to show cause why she should not be held in

22 contempt of court for flagrant, inexcusable disobedience of a clear court order.

23        This opposition and cross-motion arises in connection with an antitrust case

24 pending in the United States District Court for the Eastern District of Pennsylvania,

25

26                 

---

[1]       With respect to Zhu's Motion to Transfer its Motion to Quash to the United
27 States District Court for the Eastern District of Pennsylvania, Retrophin does not object to such transfer, so long as it does not result in further delay of the resolution of the issues raised in the Motion to Quash and Retrophin's Opposition, and subject to
28 this Court retaining jurisdiction as needed to enforce orders against Zhu.

*Spring v. Retrophin, et al*.  The plaintiff is a limited liability company (LLC), going by the name Spring Pharmaceuticals, LLC ("Spring"), founded by an antitrust lawyer at Winston & Strawn (Spring's current litigation counsel), Jialue Charles Li.  Li had the LLC formed a matter of months before Spring filed its complaint, in which Spring alleges that it is a generic pharmaceutical company seeking to produce a generic version of the branded drug Thiola, which is sold by Retrophin.  Spring claims it has been prevented from competing because it is unable to obtain samples of Thiola, which are necessary for it to perform bioequivalence testing on its generic drug (once developed) as required to obtain expedited FDA approval.

The court ordered early discovery to determine whether Spring has suffered an injury-in-fact sufficient to confer Article III standing.  Discovery produced by Spring indicated that Prinston Pharmaceutical, Inc. ("Prinston") and Zhu, an employee of Prinston, likely were in possession of critical information as to Spring's Article III standing.  Specifically, as set forth below, in early 2018 Spring and Prinston (led by Zhu) entered into negotiations for Prinston to manufacture a generic version of Thiola.  Prinston ultimately declined to work with Spring, but before it did so, it identified a potential source of samples of Thiola—the very thing Spring claims it needed, but could not obtain, in order to compete.  Accordingly, in addition to discovery requests served on Spring and other nonparties, Retrophin issued a Document Subpoena to Prinston, and a Deposition Subpoena to Zhu.

Retrophin opposes Zhu's Motion to Quash (Part I) and seeks an order compelling Zhu to appear for a deposition and for an order to show cause as to why Zhu and her counsel should not be held in contempt for violation of a clear court order (Part II).

## RELEVANT FACTUAL BACKGROUND

On October 23, 2018, Spring filed a complaint against the Defendants in the above-captioned matter, asserting antitrust violations.  Specifically, it alleged that Spring purportedly desires to bring to market a generic version of tiopronin, which Retrophin sells under the brand name Thiola.  Spring alleges that it cannot bring a

1  generic version of tiopronin to market because it is unable to acquire samples of

2  Thiola that it needs in order to conduct the "bioequivalence" testing required to obtain

3  expedited FDA approval.  Exhibit A, *Spring v. Retrophin*, Dkt. 1.

4  On January 15, 2019, the Defendants moved to dismiss the Complaint pursuant,

5  among other things, to Federal Rule of Civil Procedure 12(b)(1), on the grounds that

6  Spring lacks Article III standing because it has not suffered an injury-in-fact.  The

7  Defendants made a "factual attack," establishing with supporting evidence that Spring,

8  which, as noted, was founded by an antitrust attorney at the law firm representing it in

9  this litigation (Winston & Strawn), is a made-for-litigation company that had neither

10  the intention nor the ability to produce a generic version of Thiola—even with access

11  to Thiola samples.  Exhibit B, *Spring v. Retrophin*, Dkt. 42-1 at 9-14.

12  On April 10, 2019, Judge Joyner in the District Court for the Eastern District of

13  Pennsylvania stayed the Defendants' motions to dismiss for ninety days to allow for

14  discovery on the question "of whether Plaintiff Spring has standing to sue under

15  Article III."  Exhibit C, *Spring v. Retrophin*, at Dkt. 52 ("Order") at 18.  The discovery

16  period ends on July 8, 2019.

17  The question of Article III standing comes down to whether Spring suffered

18  injury-in-fact traceable to the Defendants' alleged conduct.  Central to that question

19  are two issues: (1) whether Spring would or could have entered the market, and (2)

20  relatedly, whether Spring was in fact unable to obtain the samples it says it needed, as

21  it claims.  Evidence produced by Spring shows that Prinston, and in particular, Zhu,

22  are likely to be in possession of highly critical evidence on both of these topics.

23  Prinston is in the business of developing and manufacturing drugs, and Spring

24  contacted Prinston, purportedly to engage Prinston as a subcontractor.  ███████

25  █████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  █████████████████████████████████████████████████████████

28  ████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████ Plainly, if Spring

in fact had access to Thiola samples, it could not have been injured by Defendants'

alleged conduct and would lack Article III standing.

██████████████████████████████████████████

██████████████████████████████████████████████

████████████ Zhu may have a better (or more honest) recollection of these

events, and her testimony as to whether samples could have been obtained and as to

whether Li demonstrated any interest in obtaining them would be critical evidence as

to Spring's Article III standing.

███████████████████████████████████████████████

██████████████████████ The reasons for Prinston's decision to discontinue its

work with Spring are also likely highly material to the question of Spring's Article III

standing. Prinston's counsel has represented, for example, that Prinston declined the

project because it was too difficult and expensive. Declaration of Philip Bowman In

Support of Retrophin's Opposition to Lesley Zhu's Untimely Motion to Quash and

Cross-Motion For an Order to Show Cause Why She Should Not Be Held In

Contempt for Violation of Fed. R. Civ. P. 45 ("Bowman Decl."), Exhibit G. ███

███████████████████████████████████████████████

██████████████████████████ ███████████████████

If Spring could not enter the market for any of these reasons, it lacks an injury-in-fact

traceable to the Defendants' conduct, and therefore lacks Article III standing.

However, Prinston has refused to provide any documents reflecting the reasons for its

decision to stop work on Spring's project or to state its reasons on the record. A

---

[2]    Spring has engaged a CDMO to conduct manufacturing activities but has not been able to ███████████████████████████████████, something that it is required to do in order to obtain expedited FDA approval. Spring had approached Prinston to perform that work but Prinston declined.

1    deposition of Zhu is therefore critical (and far from the "fishing expedition" Prinston

2    proclaims it to be).  *See* Non-Party Lesley Zhu's Motion to Quash the Subpoena Ad

3    Testificandum and to Transfer the Motion to Quash Pursuant to Fed. R. Cib. P. 45(F)

4    ("Mot."), pp. 1, 8.

5         On May 13, 2019, Retrophin, pursuant to Federal Rule of Civil Procedure 45,

6    properly issued to Prinston a Document Subpoena for the production of documents to

7    be produced on June 3, 2019.  Bowman Decl., Exhibit B.  Prinston ignored the

8    Document Subpoena, failing to raise any objections within 14 days as Rule 45

9    requires (indeed, failing ever to make any written objections to the subpoena), and

10   then failing to produce the requested documents.

11        Having received no response of any kind from Prinston and in light of evidence

12   obtained from Spring, on June 17, 2019, Retrophin served Zhu with a Deposition

13   Subpoena at her home in San Clemente, California for a deposition scheduled to take

14   place within 100 miles at Cooley LLP's offices in Santa Monica, California on June

15   28, 2019.  Bowman Decl., Exhibit C.  This followed several unsuccessful attempts to

16   serve Zhu in New Jersey, where Prinston's headquarters are located, and where

17   Retrophin was able to successfully serve the Document Subpoena.

18        On June 19, 2019, counsel for Retrophin[3] and counsel for Prinston spoke by

19   phone, during which Retrophin's counsel explained that Zhu's testimony is highly

20   relevant to the question of Spring's Article III standing and offered to accommodate

21   her schedule in setting-up the deposition.  Retrophin's counsel reiterated this by email

22   to Prinston's counsel the same day.  Bowman Decl., Exhibit E.  Prinston's counsel did

23   not respond or acknowledge this email.

24        On June 20, 2019, counsel for Retrophin offered a solution to potentially avoid

25   Zhu's deposition, suggesting that Prinston could respond to the Document Subpoena

26

---

[3]      Zhu asserts that Retrophin's counsel, Philip Bowman of Cooley LLP, is also
counsel for Mr. Shkreli in the underlying action.  This is incorrect.  As all the
pleadings in the underlying action clearly state, Mr. Bowman is counsel for
Defendant, Retrophin.

and that review of those produced documents, which would include internal

communications at Prinston, may obviate the need for Zhu's deposition.  Bowman

Decl., Exhibit F.

On June 24, 2019, *five days later*, counsel for Prinston finally responded,

stating that Prinston would only produce the exact same documents already produced

by Spring and asserting, implausibly, that Prinston has no internal documents

discussing Spring.  Bowman Decl., Exhibit H.  He also stated his belief that Zhu had

no knowledge related to the issue of standing (as he personally understood the

relevant inquiry) and that she therefore would not appear for her court ordered

deposition.  *Id.*

In response, also on June 24, 2019, Retrophin's counsel reiterated it would

"endeavor to make the deposition scheduled for this Friday as short as possible in an

effort not to inconvenience Ms. Zhu," Bowman Decl., Exhibit G,  but also confirmed

that the deposition would proceed unless and until "a court of competent jurisdiction

rule[d] otherwise,"  Bowman Decl., Exhibit I.

Despite having made the decision (at least) three days earlier (and likely even

before that) that she would not appear for her scheduled deposition, on June 27, 2019,

*the evening before* the scheduled deposition, at one minute before 5:00 pm Pacific

Time, and after counsel for Retrophin had already traveled to Los Angeles from New

York to take the deposition, Zhu filed the instant motion to quash.   Zhu did not

provide Retrophin with copies of its filed papers until mid-morning the following day

less than two hours before the scheduled start time for the deposition.[4]

On June 28, 2019, Zhu did not appear for her court-ordered deposition.

Bowman Decl., Exhibit N.

---

[4]     Prinston's counsel stated in its certificate of service that it was serving its
papers on Retrophin counsel through the United States Postal Service,
notwithstanding that it was the night before the scheduled deposition.  Prinston's
counsel did not provide copies of the exhibits it filed under seal until July 1—four
days after Zhu filed the motion.

**ARGUMENT**

**I.    ZHU'S UNTIMELY MOTION TO QUASH SHOULD BE DENIED.**

This Court should deny Zhu's motion to quash for two reasons.  First, Zhu's eleventh hour motion reflects improper gamesmanship designed to prevent Retrophin from receiving relevant court-ordered discovery and should be denied as untimely on that basis alone.  Second, Zhu's motion fails on the merits because she has not come close to demonstrating that complying with the Deposition Subpoena would cause her undue burden.

**A.    Zhu's Motion To Quash Should Be Denied Because It Is Untimely.**

As explained above, Zhu deliberately waited until the close of business the evening before her scheduled deposition to file her motion to quash.  This was done in an obvious attempt to grant to herself the very relief that she seeks from the Court. Her filing of the motion plainly did not absolve her of the obligation to attend her deposition, as detailed below.  (Part II.)  But her gamesmanship in deliberately waiting until the last possible moment to file her motion, ensuring that it could not be rejected before the scheduled deposition, and in the hopes of running out the discovery clock, is also a basis to deny the motion to quash.[5]  Indeed, courts routinely reject precisely this "Rambo" style litigation tactic.  *Caraway v. Chesapeake Exploration LLC*, 269 F.R.D. 627, 628 (E.D. Tex. 2010).

For example, in *Allstate Ins. Co. v. Nassiri*, the district court affirmed the magistrate judge's finding that the motion to quash was untimely because the non-party had three weeks' notice of the deposition but waited until three days before the deposition to file the motion.  2011 WL 4905639, at *1 (D. Nev. 2011); *see also Ellison v. Ford Motor Co.*, 2009 WL 10665410, at *1 (N.D. Ga. 2009) ("As an initial matter, the Court observes that it is not at all impressed by Plaintiffs' counsel's

---

[5] Zhu's delay tactics are particularly egregious because after Retrophin properly served the Deposition Subpoena on Zhu, there was no procedural step it could take to enforce compliance.  It had to wait until Zhu filed a motion to quash or failed to appear for her deposition before it could seek court intervention.

decision to wait until 3:55 p.m. on April 29, 2009, to file a Motion to Quash a
deposition scheduled for May 1, 2009. Defendant filed its notice of deposition for Mr.
Bowser on April 14, 2009, and Plaintiffs' counsel has offered no excuse for waiting
fifteen days to file a Motion to Quash, much less for filing the Motion on the virtual
eve of the deposition. Certainly, Plaintiffs' counsel knew shortly after receiving the
notice of deposition what objections he planned to raise in response to the notice.
Under those circumstances, waiting until very nearly the last minute to file a Motion
to Quash is unacceptable.").

Similarly, in *Nationstar Mortg. LLC v. Flamingo Trails No. 7 Landscape
Maint. Ass'n*, the court granted a motion to compel and for sanctions against a witness
who had filed a protective order the weekend before a Monday deposition, nearly two
weeks after service of the deposition notice, holding that "a party is not empowered to
grant itself, *de facto*, the relief it seeks from the Court by delaying in filing a
motion...and [t]he odor of gamesmanship is especially pronounced in the context of
discovery disputes where it appears parties routinely seek to delay their discovery
obligations by filing [a] motion for protective order on the eve of a ... noticed
deposition." 316 F.R.D. 327, 336 (D. Nev. 2016) (internal citation and quotation
omitted); *see also Caraway*, 269 F.R.D. at 628 (E.D. Tex. 2010) (criticizing the filing
of a motion for protective order the evening before a deposition because "[s]uch
tactics, dredged up from the cesspool of 'Rambo' litigation, cannot be countenanced"
and are an improper attempt to "present an opponent with a *fait accompli*").

Indeed, courts have found that where a witness is "aware of the subpoena[] but
inexplicably failed to take action; to find the motion timely under these circumstances
would render the timeliness requirement meaningless." *Avila v. Cate*, 2014 WL
508551, at *3 (E.D. Cal. 2014); *see also Barnes v. Madison*, 79 F. App'x 691, 707
(5th Cir. 2003) ("Barnes had received notice of the deposition on May 8, yet she did
not file her motion for a protective order until May 17, the Friday preceding her
Monday morning deposition. Given the timing, Barnes could hardly have expected in

1   good faith to receive a court order excusing her attendance. Therefore, we cannot say
2   that the district court abused its discretion in finding that Barnes's failure to appear
3   was not substantially justified."); *Cardoza v. Bloomin' Brands, Inc*., 141 F. Supp. 3d
4   1137, 1143 (D. Nev. 2015) ("When an attorney knows of the existence of a dispute
5   and unreasonably delays in bringing that dispute to the Court's attention until the
6   eleventh hour, the attorney has created the emergency situation and the request for
7   relief may be denied outright."); *see also Caraway*, 269 F.R.D. at 628
8   (E.D.Tex.2010) ("Plaintiffs' counsel waited until 5:59 p.m. the day before the
9   depositions were scheduled to file their motion…Had this motion been filed earlier,
10  the court could have considered a number of factors to determine a means of deposing
11  these witnesses that would be the most convenient and cost-effective for all parties
12  involved.").
13         As the Ninth Circuit has explained, "Rule 30(b) places the burden on the
14  proposed deponent to get an order, not just to make a motion.  And if there is not time
15  to have his motion heard, the least that he can be expected to do is to get an order
16  postponing the time of the deposition...[or] seek to adjourn the deposition until an
17  order can be obtained."  *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269
18  (9th Cir. 1964).  Rather than doing so, Zhu's counsel engaged in "Rambo litigation,"
19  in the hopes that the dispute would not be resolved before discovery closes and her
20  deposition would never occur.  *See Caraway*, 269 F.R.D. at 628 (E.D. Tex. 2010).
21         This willful attempt to deprive a party of discovery is improper and should not
22  be countenanced by this Court.[6]

23

24  ---
    [6] There is evidence that Zhu's conduct in response to the subpoena has been
25  influenced by or coordinated with Spring.  For example, Spring's counsel sent Zhu a
    letter suggestion that any response to the Document Subpoena would likely be
26  "duplicative" of documents produced by Spring and threatening that if she "elected"
    to produce documents Spring was entitled to review them first.  Bowman Decl.,
27  Exhibit D.  Zhu was also in contact with Spring's counsel about the Deposition
    Subpoena but her counsel has declined to disclose those communications to
28  Retrophin, even though they are plainly not privileged.  *See* Bowman Decl., Exhibit J.

**B.**   **Zhu's Motion To Quash Should Be Denied Because She Fails to Establish Undue Burden or Any Other Basis to Quash.**

A movant seeking to quash a subpoena bears the burden of proving a subpoena is unduly burdensome. *See Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012). This "burden is a heavy one." *In re Yassai*, 225 B.R. 478, 484 (Bankr. C.D. Cal. 1998); *see also U.S. v. Johnson Controls, Inc.*, 2008 WL 4601430, at *2 (C.D. Cal. 2008) ("[A] strong showing is required before a party may be denied the right to take a deposition."). Zhu fails to meet that burden and her motion should be denied.

Zhu has not demonstrated that the Deposition Subpoena imposes any significant burden on her, much less one that is undue. Zhu first claims she was not given adequate notice of the deposition. That assertion is utterly baseless. As an initial matter, Zhu never indicated prior to filing her untimely motion that she would have any difficulty in attending the deposition on the scheduled date, and indeed, counsel for Retrophin repeatedly made clear to her counsel that the deposition could take place on a different date if necessary. *Supra*, p. 7. In any event, Zhu's citation of *Free Stream Media Corp. v. Alphonso Inc.*, No. 17-cv-02107, 2017 U.S. Dist. LEXIS 202594, at *12 (N.D. Cal. Dec. 8, 2017) is not on point. That case addresses *subpoenas for documents* rather than testimony.

Zhu cites *no* authority for the proposition that she did not receive adequate notice, particularly in light of the facts here. Spring did not disclose Prinston's involvement with Spring until a month into the jurisdictional discovery period (which is only 90 days), on May 10, 2019. *Three days* after it learned of Prinston's involvement, on May 13, 2019, Retrophin promptly served its Document Subpoena on Prinston. Prinston ignored that subpoena, neither serving objections within 14 days as required under Rule 45 nor producing documents. Following Prinston's failure to comply with the Document Subpoena, Retrophin promptly started making attempts to serve Zhu with a deposition subpoena in New Jersey, where Prinston is headquartered

1   and where Prinston accepted service of the Document Subpoena.  After failed
2   attempts of service in New Jersey, Retrophin was able to successfully serve Zhu in
3   California on June 17.  The suggestion that Retrophin was somehow dilatory is thus
4   utterly baseless.

5        Zhu also argues that "preparing and sitting for a deposition is always a burden"
6   and she cannot be expected "to drop everything within eleven days of being served . . .
7   and to travel hours to sit for an unnecessary deposition."  Mot., p. 11.  But that is not
8   the standard.  The question is whether there is an "undue burden."  Fed. R. Civ. P.
9   45(d).  "[A] slight inconvenience does not constitute undue burden," *Ret. Bd. of*
10  *Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of N.Y. Mellon*,, 2013
11  WL 12139833, at *4 (C.D. Cal. 2013); *see also L.A. Idol Fashion, Inc. v. G&S*
12  *Collection*, 2011 WL 13217298, at *2 (C.D. Cal. 2011) ("[W]hile any witness who is
13  served with a subpoena suffers some discomfort by its very nature, such burden is not
14  an *undue* one, and uncomfortableness, especially resting on speculation, cannot trump
15  the paramount interest of seeking the truth[.]"); *S.E.C. v. Fuhlendorf*, 2010 WL
16  3547951, at *3 (D. Colo. 2010) (noting that "Fed. R. Civ. P. 45 contemplates that
17  third parties may be subject to some inconvenience in responding to subpoenas.").

18       In any event, Zhu never asserted *any* burden, including traveling to the
19  deposition, and Retrophin offered to accommodate Zhu to try to alleviate any burden.
20  If there is in fact some burden on Zhu due to the place or time of the deposition,
21  Retrophin was (and is) willing to accommodate her.

22       Finally, Zhu claims that the Subpoena amounts to a "fishing expedition" and
23  that she has no relevant knowledge or "anything to add."  Mot., pp. 8-9.  But it is not
24  for Zhu to decide what is and is not relevant.  Pursuant to Rule 26, parties may
25  generally seek discovery "regarding any nonprivileged matter that is relevant to any
26  party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Deposition discovery rules are
27  "accorded a broad and liberal treatment" and it is uncontroverted that "the time-
28  honored cry of 'fishing expedition' serves to preclude a party from inquiring into the

facts underlying his opponent's case" but "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *U.S. v. Johnson Controls, Inc*., 2008 WL 4601430, at *2 (C.D. Cal. 2008) (quoting *Hickman v. Taylor*, 329 U.S. 495, 506-507 (1947)).

And, critically, as discussed in detail above and below, documents Spring has produced indicate that Zhu has relevant (and highly material) knowledge to the question of Spring's Article III standing. *Supra*, pp. 5-6; *infra* p.14. Indeed, Zhu's own declaration essentially concedes the relevance of her testimony. Notably, Zhu does not deny that Prinston had identified a source of samples, and says nothing about whether Spring sought to obtain them. Rather, she says only that Prinston "never obtained samples of Thiola for bioequivalency testing purposes because the project was never pursued." Declaration of Lesley Zhu in Support of Motion to Quash, Dkt. 1-2, ¶ 17. She also states in conclusory fashion that Prinston's decision not to pursue the project had "nothing to do with" Spring's capabilities, *see id.* at ¶ 12, but particularly given that Prinston has refused to produce any documents reflecting its decision, Retrophin is not required to accept these bare assertions and should be permitted to test the extent of her knowledge and recollection through a deposition.

As this Court has noted, "[i]t is very unusual . . . to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Perfect 10, Inc. v. Google Inc*., 2010 WL 11523912, at *1 (C.D. Cal. 2010) (quoting *Salter v. Upjohn Co*., 593 F.2d 649, 651 (5th Cir. 1979)). Zhu has not identified any significant hardship caused by attending and testifying at a deposition.

Finally, any inconvenience to Zhu is greatly outweighed by Retrophin's need for her testimony.

A motion to quash should be denied where "the value of the information to the serving party" is greater than "the burden to the subpoenaed party." *Moon v. SCP Pool Corp*., 232 F.R.D. 633, 637 (C.D. Cal. 2005). Evidence produced to date

indicates that Zhu's testimony is highly relevant to Retrophin's argument that Spring lacked Article III standing. As detailed *supra*, there are two central and related issues, both of which Zhu has unique and potentially dispositive information on: (1) whether Spring was unable to obtain the samples of Thiola it says it needed to obtain FDA approval, and (2) whether Spring would or could have entered the market for generic Thiola. *Supra*, p. 5. Significantly, if Spring could have obtained samples from another source, Spring plainly was not injured by the defendants' conduct and does not have Article III standing. Similarly, if Prinston concluded that developing a generic Thiola was prohibitively expensive, that fact would be highly material to whether Spring could have entered the market and therefore to whether it had constitutional standing to bring its claims. Thus, evidence about the nature of Spring's negotiations with Prinston over the possibility of developing that very same drug may bear directly on whether Spring can carry its burden of showing Article III standing.

Accordingly, Zhu's motion is not only untimely, but meritless, and should be denied.

## II. ZHU SHOULD BE ORDERED TO SHOW CAUSE WHY SHE SHOULD NOT BE HELD IN CONTEMPT.

Under Rule 45, a nonparty may be commanded to "attend and testify" at a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business." Fed. R. Civ. P. 45(a)(1)(iii), 45(c)(1)(a). Although issued by attorneys, subpoenas are "issued on behalf of the Court and should be treated as orders of the Court." *Bademyan v. Receivable Mgmt. Servs. Corp.*, 2009 WL 605789, at *2 (C.D. Cal. 2009) (internal quotation and citation omitted). As a result, according to Rule 45(e), the court issuing a subpoena "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. Proc. 45(g) (formerly 45(e)).

The law is well settled that "[u]nless a party or witness files a motion for a

COOLEY LLP
ATTORNEYS AT LAW

protective order and seeks and obtains a stay *prior* to the deposition, a party or witness has no basis to refuse to attend a properly noticed deposition." *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig*., 2010 WL 4942645, at *3 (C.D. Cal. 2010) (compiling cases); *see also Anderson v. Abercrombie & Fitch Stores, Inc*., 2007 WL 1994059, at *8 (S.D. Cal. 2007) ("[A] motion to quash must be not only made but *granted* before the scheduled deposition to excuse compliance[.]") (internal citation and quotation omitted).

> The Ninth Circuit has clearly articulated this requirement:

> Counsel's view seems to be that a party need not appear if a motion … is on file, even though it has not been acted upon. Any such rule would be an intolerable clog upon the discovery process. Rule 30(b) places the burden on the proposed deponent to get an order, not just to make a motion. …But unless he has obtained an court order that postpones or dispenses with his duty to appear, that duty remains. Otherwise, as this case shows, a proposed deponent, by merely filing motions under Rule 30(b), could evade giving his deposition indefinitely. Under the Rules, it is for the court, not the deponent or his counsel, to relieve him of the duty to appear.

*Pioche Mines Consol., Inc.*, 333 F.2d at 269 (9th Cir. 1964); *see also* Cal. Practice Guide: Fed. Civ. Pro. Before Trial ¶ 11:1166 (The Rutter Group 2010) ("A party served with a deposition notice or discovery request must obtain a protective order … before the date set for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery[.]").

Here, Zhu was properly and personally served with the Deposition Subpoena at her home in San Clemente, California on June 17, 2019, for a deposition scheduled to take place within 100 miles, at Cooley LLP's offices in Santa Monica, California on June 28, 2019. Instead of engaging in proper procedure to seek to preclude her deposition, Zhu deliberately waited until the close of business the evening before her scheduled deposition to file a motion to quash. *Supra*, p. 8. She then granted herself

the requested relief and failed to attend the deposition.

Once it is established that an individual failed to comply with a subpoena, "the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply, and to articulate reasons why compliance was not possible." *Bademyan*, 2009 WL 605789, at *2 (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)). In assessing whether an individual has "adequate excuse" for noncompliance, the key inquiry is whether he or she has taken "all reasonable steps within their power to insure compliance with the court's orders." *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (emphasis added) (internal citation and quotation omitted).

Zhu took no steps, let alone reasonable steps, to comply with the subpoena. She does not have adequate excuse for non-compliance. *See*, *e.g.*, *Barnes*, 79 F. App'x at 707 (5th Cir. 2003) ("Barnes had received notice of the deposition on May 8, yet she did not file her motion for a protective order until May 17, the Friday preceding her Monday morning deposition. Given the timing, Barnes could hardly have expected in good faith to receive a court order excusing her attendance. Therefore, we cannot say that the district court abused its discretion in finding that Barnes's failure to appear was not substantially justified."). The consequences of her disregard are clear: "failure to comply with [the] subpoena without adequate excuse is a contempt of court." *Ceremello v. City of Dixon*, 2006 WL 2989002, at *2 (E.D. Cal. 2006).

## CONCLUSION

For the foregoing reasons, Retrophin respectfully requests that this Court deny Zhu's Motion to Quash and order Zhu to appear and testify at a deposition at Cooley LLP, 1333 2nd St, Suite 400, Santa Monica, CA 90401, at a date ordered by the Court, or at such time and place as may be agreed by the parties, and to show cause, as promptly as the Court's schedule allows, as to why the Court should not hold Zhu in contempt for her failure to abide by a Rule 45 subpoena.

COOLEY LLP
ATTORNEYS AT LAW

Dated:      July 2, 2019

*/s/*  Randall R. Lee

Randall R. Lee
Cooley LLP
1333 2nd Street
Suite 400
Santa Monica
Telephone: 310-883-6400
randall.lee@cooley.com

Philip Bowman
Ian Shapiro
Cooley LLP
55 Hudson Yards
New York, NY 10036
Telephone: 212-479-6000
pbowman@cooley.com
ishapiro@cooley.com

Deepti Bansal
Cooley LLP
1299 Pennsylvania Avenue, NW
Washington D.C. 20001
Telephone: 202-842-7800
dbansal@cooley.com

*Attorneys for Respondent Retrophin, Inc.*