**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


SPRING PHARMACEUTICALS, LLC,          :
                                      :
          Plaintiff,                  :    CIVIL ACTION
                                      :
     v.                               :    No. 18-cv-04553
                                      :    No. 19-mc-137
                                      :
RETROPHIN, INC., MARTIN SHKRELI,      :
MISSION PHARMACAL COMPANY, and        :
ALAMO PHARMA SERVICES, INC.,          :
                                      :
          Defendants.                 :


**MEMORANDUM**

**JOYNER, J.**                              **August   7 , 2019**

     Before the Court are non-party Movant Lesley Zhu's Motion
to Quash the Subpoena Ad Testificandum (Doc. No. 73), Defendant
Retrophin, Inc.'s ("Retrophin") Cross-Motion for an Order to
Show Cause Why Zhu Should Not Be Held in Contempt (Doc. No. 74),
Movant's Opposition thereto (Doc. No. 72), and Defendant's
Response in Support thereof (Doc. No. 76).  For the reasons
below, Movant's Motion to Quash is GRANTED and Defendant's
Cross-Motion is DENIED.

**I.   BACKGROUND**

     This discovery dispute arises from a limited period of
jurisdictional discovery that this Court Ordered to help resolve
whether Plaintiff Spring Pharmaceuticals, LLC, ("Spring") has
constitutional standing to bring antitrust allegations against
Defendants Retrophin Inc., et al.  See Doc. No. 52 at 18.  The

1

facts of this case are set forth in this Court's Memorandum staying Defendants' Motions to Dismiss.  <u>See</u> <u>id.</u>  Therefore, the Court will only discuss facts relevant to this motion.

In or around August 2017, Plaintiff Spring contacted Prinston Pharmaceutical Inc. ("Prinston") – a company that develops, manufactures, and markets a wide variety of generic prescription pharmaceutical drugs – to begin preliminary discussions regarding the possibility that Prinston would develop a generic version of Defendants' drug Thiola for Spring. Doc. No. 73, Zhu Mot. at 6.  On March 16, 2018, Ms. Lesley Zhu, Senior Vice President of Business Development & Portfolio for Prinston, sent Spring, on behalf of Prinston, a proposed timeline for development and FDA-review of a generic Thiola. <u>Id</u>. at Ex. H.  "Prinston and Spring drafted and revised, but never finalized or signed, a letter of intent."  <u>Id.</u> at 7, Zhu Decl., Ex. 1 at ¶9.  On May 24, 2018, Prinston withdrew from its discussions with Spring.  <u>Id.</u> at Ex. I.

On October 23, 2018, Plaintiff Spring filed a Complaint in this Court against Defendants, alleging antitrust violations. The heart of Spring's Complaint is that Defendants engaged in anticompetitive conduct by refusing to provide Spring with samples of Thiola.  The samples are necessary for a generic to enter the market through the "abbreviated new drug applications" ("ANDA") process for earning FDA approval, a regulatory shortcut

2

intended by Congress as a route to speed lower-priced generic drugs to market and consequently lower the cost while expanding the accessibility of pharmaceutical drugs.  See Doc. No. 52 at 4; Compl. ¶33.  Spring alleged that in preparation to develop and bring to market a generic version of Thiola, it had "reached an agreement" with a contract development and manufacturing organization ("CDMO") "to perform the necessary development work once Spring is able to acquire the Thiola samples required to advance the work."  Compl. ¶78.  Spring did not name the CDMO with whom they allegedly contracted, explaining that "confidentiality agreements. . .prohibit the disclosure of confidential contract terms and/or its partners' identities without a court order [or protective order] requiring such disclosure."  Id. ¶11 n. 8.  Nevertheless, before Retrophin sought to depose Ms. Zhu, Retrophin learned from Spring's supplemental interrogatory answers that although Prinston was one of several companies with which Spring had discussed aspects of the generic drug development process, Spring and Prinston did not enter an agreement.  See California Action, Doc. No. 5-2, Ex. A to the Decl. of Randall R. Lee in Support of Respondent Retrophin, Inc.'s Application for Leave to File Under Seal Exhibits, at pp. 4-5.

   When Defendants mounted a factual attack to Spring's constitutional standing to sue, this Court allowed for ninety-

days of jurisdictional discovery limited to the question of
whether Spring has Article III standing to sue.  See Doc. Nos.
52 and 53.  Specifically, Spring's standing relates to whether
Spring is a company and not a shell for mounting a purported
"sham litigation," id. at 13; whether Spring is "ready and able
to compete" with Defendants' drug Thiola, but for its lack of
access to Thiola samples, id. at 16, citing Compl. ¶68; and
whether Spring is financially prepared to enter the
pharmaceutical market as a generic competitor to Thiola, id. at
17.  In other words, the scope of discovery was limited to
whether Plaintiff has established an imminent threat of
redressable injury that is causally connected to Defendants'
"allegedly unlawful conduct."  See Lujan v. Defenders of
Wildlife, 504 U.S. 555, 590 (1992) (quoting Allen v. Wright, 468
U.S. 737, 751 (1984)); see id. at 560 (quoting Whitmore v.
Arkansas, 495 U.S. 149, 155 (1990)).

In ordering limited discovery, we laid out the "threshold
Article III standing requirements" that a plaintiff alleging
antitrust violations must satisfy before we may proceed to
analyze antitrust standing, which is "distinct" from
constitutional standing.  See Phila. Taxi Ass'n v. Uber Techs.,
886 F.3d 332, 343 (3d Cir. 2018) (citing Ethypharm S.A. Fr. v.
Abbott Labs., 707 F.3d 223, 232 (3d Cir. 2013).  We also noted
the purpose of standing requirements: "[they] ensure that

plaintiffs have a 'personal stake' or 'interest' in the outcome

of the proceedings, 'sufficient to warrant . . . [their]

invocation of federal-court jurisdiction and to justify exercise

of the court's remedial powers on . . .[their] behalf.'" Joint

Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 176 (3d Cir.

2001) (quoting Wheeler v. Travelers Ins. Co., 22 F.3d 534, 537-

38 (3d Cir. 1994)). In rebuttal to Defendants' factual attack,

Spring asserted that as part of the substantial steps it has

taken toward developing a generic version of Thiola, it has

secured financing, see Compl. ¶13, communicated with consultants

to help navigate the regulatory process of submitting an ANDA,

see id. ¶12, and that it has "an agreement" with a CDMO

experienced in launching generic drugs, see supra, and has

registered with the FDA as a "drug establishment." See Li.

Decl. ¶11.

On June 17, 2019, Retrophin served non-party Lesley Zhu with a

subpoena for her to appear for a deposition on June 28, 2019, to

take place within 100 miles of her home in San Clemente,

California. See Doc. No. 74 at 11. On June 19, 2019, counsel

for Ms. Zhu and counsel for Retrophin spoke by phone regarding

the subpoena for Ms. Zhu's testimony.

On June 24, 2019, counsel for Prinston stated that Prinston

had no internal documents discussing Spring, see Def. Cross-

Mot., Ex. H, and that Ms. Zhu had no knowledge relevant to the

issue of Spring's constitutional standing to bring antitrust allegations against Retrophin, and on that basis would not appear for the subpoenaed deposition. _Id._

On June 24, 2019, following a discovery conference among the parties, we entered a second Order denying Retrophin's motion to compel the deposition of a former Spring chief executive officer on the grounds that the deposition would have exceeded the narrow jurisdictional scope of discovery as circumscribed by our April 9, 2019, Order (see _supra_, Doc. No. 53). Doc. No. 69. In denying Retrophin's motion to compel, we explained that the deposition was inappropriate because Ms. Hua "has no 'unique or first-hand knowledge of the contested issues' and. . .Defendants have not shown that 'such evidence is not available from other sources within [Spring's] management ranks,' such as from Spring's CEO, Mr. Charles Li, who Spring has made available as a Rule 30(b)(6) witness to testify on behalf of the Plaintiff company on the limited issue of Article III standing." Doc. No. 69 (quoting _Faloney v. Wachovia Bank, N.A._, No. 07-CV-1455, 2008 WL 11366180, at *2 (E.D. Pa. July 30, 2008)). In other words, Retrophin could have obtained the information they sought regarding Spring's funding for its efforts to develop a generic version of Thiola from Spring's CEO, Mr. Li, whom they had an opportunity to depose, during jurisdictional discovery.

On June 27, 2019, Ms. Zhu filed a motion to quash Retrophin's subpoena and for reasonable attorney's fees to cover the costs thereof.  On July 16, 2019, the Honorable John A. Kronstadt of the United States District Court for the Central District of California transferred Ms. Zhu's motion to this Court, where the underlying antitrust action is located, pursuant to the parties' joint stipulation.  Doc. No. 71 at ¶7.

## II.  LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Although courts have construed relevancy "broadly," Amini Innovation Corp. v. McFerran Home Furnishings, Inc., 300 F.R.D. 406, 409 (C.D. Cal. 2014) "'[a] showing of relevance can be viewed as a showing of need; for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of a matter not 'relevant to the subject matter involved in the pending action.'"  Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd., 245 F.R.D. 26, 29-30 (D.D.C. 2007) (quoting Friedman v. Bache Halsey Stuart Shields, Inc., 238 U.S. App. D.C. 190, 738 F.2d 1336, 1341 (D.C. Cir. 1984) (citing Fed. R. Civ. P. 26(b)(1)).

Yet, even relevant discovery can be circumscribed.  As set forth by Rule 26(b)(1), the court determining whether requested

discovery exceeds permissible scope may consider "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Furthermore, a district court "must limit the . . . extent of discovery otherwise allowed by these rules . . . if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, . . .;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. (2)(C)(i – iii). See also Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd., 245 F.R.D. 26, 30 (D.D.C. 2007) (quoting id.) (antitrust case noting a court's power, "[p]ursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii), [to] limit discovery on its own initiative, if it determines that the 'burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, . . . the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving those issues."

Indeed, relevance is a factor incorporated by courts "when determining motions to quash a subpoena." Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005). Rule 45(d)(1), which provides for "protecting a person subject to a subpoena"

and a district court's enforcement power, instructs that "[a]
party or attorney responsible for issuing and serving a subpoena
must take reasonable steps to avoid imposing undue burden or
expense on a person subject to the subpoena.  Rule 45 "applies
to subpoenas ad testificandum and duces tecum issued by the
district courts for attendance at a hearing or a trial, or to
take depositions."  Rule 45 Advisory Committee Notes.

Rule 45 directs a district court "where compliance [with a
subpoena] is required [to] quash or modify a subpoena that . . .
subjects a person to undue burden."  Amini at 409, quoting Fed.
R. Civ. P. 45 (d)(3)(a)(iv).  To determine whether a subpoena
imposes an undue burden, "courts 'weigh the burden to the
subpoenaed party against the value of the information to the
serving party.'"  Id. (quoting Moon, 232 F.R.D. at 637 (internal
citations omitted)).  "The unwanted burden thrust upon non-
parties" is afforded "special weight in evaluating the 'balance
of competing needs' in a Rule 45 inquiry."  Id.
(quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st
Cir. 1998)).  A court's "restriction [on discovery] may be
broader when a non-party is the target of discovery."  Dart
Industries Co., Inc. v. Westwood Chemical Co., 649 F.2d 646 (9th
Cir. 1980). Further,

> [i]n addition to the need of the requesting party for the
> information and the burden on the non-party in complying
> with the subpoena, other factors a court should consider

include the relevance of the requested information and the
breadth or specificity of the discovery request.  See Moon,
232 F.R.D. at 637.  Courts are particularly reluctant to
require a non-party to provide discovery that can be
produced by a party.  Accordingly, "[a] court may prohibit
a party from obtaining discovery from a non-party if that
same information is available from another party to the
litigation."

Amini, 300 F.R.D. at 409-410 (quoting Rocky Mountain Medical

Management, 2013 U.S. Dist. LEXIS 175590, 2013 WL 6446704 at *4

(D. Idaho Dec. 9, 2013)).

    With regard to a motion for contempt, the moving party

"bears the burden of establishing by clear and convincing

evidence that the contemnor has violated a specific and definite

order of the court."  Bademyan v. Receivable Mgmt. Servs. Corp.,

2009 WL 605789, at *2 (C.D. Cal. 2009).

**III. DISCUSSION**

    A. Undue Burden

    Under Rule 45(c)(3)(A), a motion to quash a subpoena to

testify must be granted if the subpoena is unduly burdensome.

Determining whether a subpoena imposes an undue burden requires

courts "'to weigh the burden to the subpoenaed party against the

value of the information to the serving party[,]'" 2007 WL

1994059 (S.D. Cal. 2007) at *2 (quoting Moon, 232 F.R.D. at

637).  We note that "the Ninth Circuit has long held

that nonparties subject to discovery requests deserve extra

protection from the courts. . . . 'Nonparty witnesses are

powerless to control the scope of litigation and discovery. . . .'" High Tech Med. Instrumentation v. New Image Indus., 161 F.R.D. 86, 88 (N.D. Cal. 1995) (quoting United States v. C.B.S., 666 F.2d 364, 371-72 (9th Cir. 1982)).

This balancing analysis involves considerations of more than one factor, including relevance. Id. As part of a court's "broad discretion to determine whether a subpoena is unduly burdensome," a finding that the information sought by a subpoenaing party relates to topics "beyond the scope of the litigation" can increase the unduly burdensome nature of the subpoena. Anderson v. Abercrombie & Fitch Stores, Inc., No. 06-CV-991-WQH, 2007 WL 1994059, at *2 (S.D. Cal. July 2, 2007) (citing Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 779 (9th Cir. 1994)).

Any Rule 45 subpoena of a non-party "to attend and give testimony," is "subject to the relevance requirements set forth in Rule 26(b)." Id. at *2 (citing Fed. R. Civ. P. 45(a)(1)(C)). "However broadly defined, relevancy is not without "ultimate and necessary boundaries." Hickman v. Taylor, 329 U.S. 495, 507 (1947). Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).

Here, non-party Lesley Zhu contends that Retrophin's subpoena should be quashed because it is unduly burdensome under

Fed. R. Civ. P. 45(d)(3). Ms. Zhu argues that the subpoena overtly oversteps the jurisdictional scope of this Court's discovery Order (Doc. Nos. 52 and 53) because she has no information that would be relevant to the question of whether Plaintiff Spring has constitutional standing to sue.

Further, Ms. Zhu argues that Retrophin's subpoena seeks duplicative information, and therefore should be limited pursuant to Rule 26(2)(C)(i), because Retrophin has already received, through document production by Plaintiff Spring, the same information they seek from non-party Zhu. Specifically, Ms. Zhu argues that she already set forth, in an email to Spring, Prinston's reasons for withdrawing from preliminary discussions with Spring about developing a generic version of Thiola. Movant argues that this information has been provided to Defendant Retrophin by Spring, and that Ms. Zhu has nothing to add to it; that, in other words, the "document speaks for itself." Zhu Mot. at 9, See Mov. Decl. ¶¶11-12. Moreover, Retrophin had the opportunity to depose Plaintiff's CEO, Mr. Li, from whom they could have acquired information regarding Spring's ability to access to Thiola samples from Printson, information that Retrophin seeks from Ms. Zhu. Thus, Ms. Zhu argues that Prinston's "ability or inability . . . to obtain Thiola samples is entirely irrelevant to Retrophin's

jurisdictional argument, and, indeed, to any need by Retrophin for this testimony." Zhu Mot. at 10.

In its Opposition to Ms. Zhu's Motion to Quash, and its Cross-Motion for Ms. Zhu to show cause as to why she should not be held in contempt for failing to attend their requested deposition, Defendant Retrophin argues that Ms. Zhu's testimony is relevant to whether Spring was poised to enter the pharmaceutical market. Ret. Opp. at 19.

Here, Retrophin seeks to depose Ms. Zhu, a non-party employed by Prinston, a company that entered and subsequently withdrew from preliminary discussions with Spring regarding developing a generic drug. Retrophin argues that Ms. Zhu's testimony could possibly answer whether Prinston was able to secure samples of Thiola. We intuit that Retrophin is trying to argue that non-party Prinston's ability to procure samples of Thiola could shed light on Plaintiff Spring's ability to access Thiola samples. In the event that a deposition of Ms. Zhu confirmed that Prinston could and/or did procure Thiola samples, Retrophin's argument would proceed to assert that Spring was not precluded from accessing the samples it needs in order to develop a generic version of Retrophin's drug; this line of reasoning would thereby conveniently nip in the bud the underlying antitrust cause of action against Retrophin, whose central allegation is that Retrophin's anticompetitive conduct

has blocked Spring from developing a competing generic version of Thiola by withholding samples of its drug that are required for generic development and market entry through the ANDA regulatory fast-track.

We find, however, that Defendant Retrophin attempts to take advantage of the apparent overlap between the injury-in-fact requirement which must be satisfied for a plaintiff to show constitutional standing, and the "antitrust injury" requirement for a plaintiff to establish antitrust standing. See ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 310 n.8 (3d Cir. 2012) (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977)) ("an antitrust plaintiff seeking monetary or injunctive relief must show that it has suffered antitrust injury, i.e., an 'injury of the type that the antitrust laws were intended to prevent and that flows from that which makes [the] defendant['s] acts unlawful.'").

We allow that "descriptions of concrete plans" to enter the relevant pharmaceutical market are necessary for a plaintiff to establish constitutional standing. ZF Meritor, LLC, 696 F.3d at 301. Yet, Spring's argument that it has established "concrete plans" to compete in the relevant drug market is based on their allegation that they entered an agreement with an unnamed CDMO, not with Prinston. Notedly, in Ms. Zhu's sworn declaration, she stated that "the sole reason why Prinston withdrew from and

14

terminated the preliminary discussions with Spring was because of Prinston's own resource constraints.  Prinston never obtained samples of Thiola for bioequivalency testing purposes because the project was never pursued." See Zhu Mot., Ex. 1 at ¶17.

On the other hand, if Retrophin sought to depose an employee of the CDMO with whom Spring alleged it had an agreement to help it develop a generic version of Thiola, our decision would likely be different.  Spring's agreement with the CDMO referenced in the Complaint, Compl. ¶78, is relevant to whether Spring is in fact poised to enter the relevant biopharmaceutical market.  Therefore, it is relevant to whether Spring has constitutional standing, or, put differently, to whether Defendants' conduct has caused an "imminent threat" to Spring's ability to compete with a generic version of Thiola. Lujan, 504 U.S. at 590.  However, Spring's ability to access samples of Thiola is a merits question for Plaintiff Spring, or one which Retrophin could have probed through its deposition of Mr. Li, Spring's CEO; access to samples also applies to subsequent stages of the underlying litigation, both to antitrust standing, and to the merits of a Sherman Act claim; not to the threshold question of constitutional standing to sue. Therefore, we find that Retrophin's subpoena imposes an undue burden on non-party Zhu because her deposition testimony would be irrelevant to the instant jurisdictional discovery.

B. Timeliness

Retrophin argues that Ms. Zhu's motion to quash should not be granted because it was untimely filed at the "close of business the evening before her scheduled deposition." Ms. Zhu argues that on the contrary, her motion was timely because it was filed before the scheduled deposition date named in the subpoena, and because the timing of Retrophin's subpoena, (serving it on June 17th, 2019, and scheduling the deposition eleven days later, on June 28th, 2019) adds to Ms. Zhu's burden. See Free Stream Media Corp. v. Alphonso Inc., 17-cv-02107, 2017 U.S. Dist. LEXIS 202594, at *12 (N.D. Cal. Dec. 8, 2017).

"On timely motion" a subpoena can be quashed if it "subjects a person to an undue burden." Fed. R. Civ. P. 45(c)(3)(A). Courts determining timeliness of a motion to quash have assessed whether the motion was filed "before the compliance date designated in the subpoena." Odyssey Reinsurance Co. v. Nagby, No. 16-cv-3038-BTM, 2018 WL 1963665, at *2 (S.C. Cal. Apr. 26, 2018). See also Anderson v. Abercrombie & Fitch Stores, Inc., No. 06- CV-991-WQH, 2007 WL 1994059, at *8 (S.D. Cal. July 2, 2007) (holding that "[t]o excuse compliance, a motion to quash must be made before the production or deposition date identified in the subpoena."). Additionally, a "nonparty served with a subpoena . . . may make

objections . . . within 14 days after service or before the time for compliance, if less than 14 days." Moon, 232 F.R.D. at 636.

We find that the cases cited by Defendant to support their argument that Ms. Zhu's motion is untimely are not on point. Nationstar Mortg. LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n addressed a plaintiff's "[delay] in filing a motion" for a "protective order," 316 F.R.D. 327, 336 (D. Nev. 2016), not as here, a non-party's timely filing of a motion to quash after counsel for the non-party communicated with counsel for Retrophin the reasons Ms. Zhu would oppose the deposition. For similar reasons Avila v. Cate, deriding a witness who "inexplicably failed to take action" through a motion to quash a subpoena the witness was aware of, is inapposite because within the ten days between receiving the subpoena and the scheduled deposition date, her counsel communicated to Retrophin's counsel that she would not appear due to the duplicative and irrelevant nature of the testimony sought, Retrophin refused to withdraw its subpoena, and Ms. Zhu filed a motion to quash. 2014 WL 508551, at *3 (E.D. Cal. 2014).

Here, where Ms. Zhu filed her motion to quash before the date on which compliance was due and communicated with Retrophin's counsel that she would oppose the deposition on irrelevance and burden grounds, we find her motion was timely.

C. Contempt

Relatedly, Retrophin filed a Cross-Motion, Doc. No. 74, asking this Court to order non-party Zhu to show cause as to why the Court should not hold her in contempt, on the ground that Ms. Zhu failed to obey its subpoena for her deposition without adequate and reasonable excuse.

Federal Rule of Civil Procedure 45(g) allows a court to "hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or an order related to it." Yet, the Advisory Committee on Rule 45 cautioned that "contempt should be very sparingly applied when the non-party witness has been overborne by a party or attorney," "because the subpoena command. . .is not in fact one uttered by a judicial officer." Fed. R. Civ. P. 45 Advisory Committee Notes to 1991 Amendment. "The Ninth Circuit's inquiry regarding contempt "has long been whether [contemnors] have performed 'all reasonable steps within their power to insure compliance' with the court's orders." Stone, 968 F.2d at 856 (quoting Sekaquaptewa v. MacDonald, 544 F.2d 396, 404 (9th Cir. 1976), cert. denied, 430 U.S. 931 (1977)).

Defendant Retrophin cites Bademyan to support their cross-motion yet we find it is not on point. There, the court had already ordered a non-party to appear for a deposition following a hearing on the serving party's motion to compel her

deposition. 2009 WL 605789, at *1. Here, by contrast, Retrophin has not filed a motion to compel Ms. Zhu's deposition, we have not ordered Ms. Zhu to appear for her deposition, and Ms. Zhu objected to Retrophin's subpoena through a communication with counsel for Defendant, Doc. No. 74 at 15-16, (though she neither served nor filed this objection.).

D. Reasonable attorney's fees

Last, Ms. Zhu moves this Court to impose an appropriate sanction on Retrophin in the form of her reasonable attorney's fees for costs associated with filing this motion. Ms. Zhu argues that counsel fees are appropriate for two reasons. First, because Retrophin violated this Court's Order by subpoenaing her, a non-party, to give deposition testimony which was clearly beyond the scope of the ongoing limited jurisdictional discovery; and second, because counsel for Ms. Zhu objected to the subpoena and explained to Retrophin's counsel why her deposition would not be relevant to the question of Spring's constitutional standing, yet Retrophin did not withdraw its subpoena. <u>See</u> Zhu Mot. at 12.

"A party or an attorney responsible for the issuance of and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in

19

breach of this duty an appropriate sanction, which may include, but is not limited to, . . .a reasonable attorney's fee." Fed. R. Civ. P. 45(c)(1). The Ninth Circuit has provided that nonparties, on account of their limitation in being able to control the scope of discovery, "should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party. . . . [A] witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or producing party." C.B.S., 666 F.2d at 371-72. See also Essociate, Inc. v. Blue Whaler Invs., LLC, No. CV 10-2107-JVS (MLGx), 2012 U.S. Dist. LEXIS 197277, at *7-8 (C.D. Cal. Apr. 12, 2012) ("Non-parties are afforded extra protection from the courts under . . . Rule 45(c)(1)."). Accord High Tech Med. Instrumentation v. New Image Indus., 161 F.R.D. 86, 89 (N.D. Cal. 1995) ("Both the language of Rule 45(c)(1) and that of the Ninth Circuit in C.B.S. make it clear that sanctions are appropriate if the subpoenaing party fails to take reasonable steps to avoid imposing an undue burden on a third party.").

We find that Defendant Retrophin, in attempting to depose a non-party on a matter irrelevant to the question of whether Plaintiff Spring has constitutional standing to sue, thereby overstepping the narrow scope of discovery at this early stage in the underlying litigation, did not "take reasonable steps to

avoid imposing an undue burden on a third party." <u>Id.</u>  If we follow Retrophin's reasoning, the discovery could spiral into depositions of anyone who had any conversations with Spring about possibly developing a generic version of Thiola, which would impermissibly expand the narrow scope of the jurisdictional discovery we ordered on the threshold question of standing.  Therefore, we GRANT movant's request for reasonable attorney's fees.

**IV.  Conclusion**

For the foregoing reasons, the Court GRANTS non-party Lesley Zhu's Motion to Quash (Doc. No. 73) and DENIES Defendant Retrophin's Cross-Motion for an Order to Show Cause Why Zhu Should Not Be Held in Contempt (Doc. No. 74).  An appropriate Order will follow.